volunteer lawyers for about a thousand of those people. They have now started another round of putting another 2,000 through hearings. Of the 700 who lost their benefits, take that back, excuse me, of the 700 who kept their benefits, two of those were the estates of now the late Leroy Burchett and the late Melissa Jude. The way the defendants have portrayed this case is that somehow we are seeking damages because we were wrongfully denied benefits in terms of the two estates I represent. That's not what we're saying at all. What we're saying here is that the acts of the Social Security Administration foreseeably and predictably caused the deaths, the suicide deaths, of these two people. Is this under the Federal Tort Claims Act or is it under something else? Federal Tort Claims Act, Your Honor. We had other claims as well. What's your best case to show we would have jurisdiction? I'm sorry, Judge. What's your best case to show jurisdiction here against Social Security Administration? Under the Federal Tort Claims Act and what I want to focus on is, why I went through a little bit of that chronology, is our claim is based on these 14 days. Memorial Day weekend of May 2015, just before the Social Security Administration sent out 900 surprise suspension of benefits letter. Well, it sounds very bad, but I just want to know what kind of a case we've got from this circuit or other circuits to show you can find relief here. Under the Federal Tort Claims Act, and let me cite the Schweiker v. Hansen case, they said you can hold an agency responsible if you can show affirmative misconduct. Schweiker v. Hansen is an estoppel against the government case. You're not arguing estoppel against the government, are you? We're arguing they committed affirmative misconduct. You're arguing estoppel against the government, collateralist? The government said something and they're not doing what they said. That's a collateral estoppel case. They got up, they said you were entitled to benefits and then a typical collateral estoppel case, the Social Security officer says you're entitled to benefits and they go out and, I don't know, buy a house or whatever, and then it turns out that the government says you're not entitled and they say, well, you're estopped because you told me, and then you have to have affirmative misconduct. That's a kind of case. That's not what you're arguing in this case, is it? Or is it? That case is the closest I could find to these very facts. I understand, but it's not a collateral estoppel case against the government. It's not, Your Honor. So can we talk about documents that come from cases that are relevant to? I'm sorry? Can we talk about doctrines that are relevant to your cause of action? Sure. The reason I cited the Hansen case, that talks about at what point can a federal agency do something to make themselves liable under the Federal TORC Claims Act? We alleged affirmative misconduct and we took that phrase out of that case. And I realize that the facts and issues, we are not claiming damages because we were wrongfully denied benefits. In fact, my clients went through those. You're also not claiming, correct me if I'm wrong, damages because you were misled. Correct. And that affirmative misconduct deals with whether you can recover for being misled. And you can only do it possibly in the case of affirmative misconduct. But since you're not arguing that, I'm having trouble seeing why the exception to the conclusion for something you're not arguing. Let me argue where we're coming from. I think there's three instances where the Social Security Administration did things individually and collectively that make them liable under the Federal TORC Claims Act. The three things are, one, under the statute that says they have the right to put these people through redetermination hearings, it says they must do an individual assessment. That's an obligation under the Social Security Act? Yes, sir. It's in their regulations. We cited it to the district court. We pled it. It was never discussed. And the individual assessment... The problem I have, let me tell you right off, the problem I have with that, if that's a claim under the Social Security Act, then 405H says claims under the... Well, that is where they violate... They don't allow claims under the Social Security Act. So that's why if you square that under the Social Security Act, you run into a preclusion of jurisdiction under 405H, or not. That's what they argue. That is, we are alleging they violated the Federal TORC Claims Act because of the three things they did. That's the first thing, which they violated their own regulation. It violates the Social Security Act, basically. Correct. The second thing they did was they sent these 900 people letters saying, you got benefits typically 9, 10 years ago. You have 10 days to send us medical documentation. That's not in the act at all, Judge. They just made that up. What does it violate then? Huh? What does it violate? Is it negligence? I mean, what's the cause of action if it's not under the... It's not violation of the statute. It's negligence? What is the legal requirement? It's negligence then? Negligence. Common law negligence? Correct. Is it foreseeable that if you send out 900 surprise letters, they weren't sending to a random sample of population. These were people who they knew or should have known were... I understand now. You have one statutory claim, one negligence claim. What's the third one? Well, we allege affirmative misconduct and negligence. So it's basically either negligence or violation of the statute. They knew or should have known. This was foreseeable. That sounds like negligence. I'm not arguing with you. I'm just trying to categorize it, put a pigeon hole into something You've thrown me off a little bit, Judge. Are you with me? So basically you're making a statutory violation claim and a negligence claim. Correct. And the third thing they did wrong, and this crosses over into the Hicks v. Colvin argument, the statute says they must do so immediately. That's a statutory claim, too. Huh? That's a statutory claim. Yes, it is. That is. You've got two violations of the statute and one negligence claim. And notice, which there is no statute. They just made that up. I thought you said they violated their own regulation on that one. That's our argument as to two of them, Your Honor. It's important to remember, during this 14-day period, these letters went out, and not surprisingly, right after this, we call it the mission impossible, getting medical records from 10 years went by. It's foreseeable on the 11th or 12th day we had the two suicides. Didn't the letters say they could ask for more time? They did. They did, Your Honor. But to these type of people with these type of problems that take away their benefits, even the promise you have more time, their benefits are cut off. Leroy Burt should immediately, for economic reasons, stop taking his antidepressants. So the benefits were going to be cut off after the 10-day period, regardless, or they were cut off immediately? Cut off immediately. When the letter was sent out. Correct. The letters are dated, I believe, May 18th, 2015. The letter said your benefits are cut off now. And that's the issue. But for the intervention of Congressman Rogers, the only good thing that my vulnerable clients had in their favor was Congressman Rogers is not an ordinary congressman. He's probably the most influential member. And he intervened. He said what they did was un-American. He said if you don't reinstate the benefits and put these people through hearings, he said words to the effect, it's a matter of life and death. But for Congressman Rogers intervening, I don't know how many more suicides we would have had. The letter said your benefits are cut off now. Yes, you can submit more evidence, but what do they do in the meantime? But this only went on for 14 days, this policy. They enacted a policy, 14 days later they reversed it. I'm sorry, Judge. Regardless of one's sympathy for these people, which I have very great sympathy for, why is this not covered by the discretionary function exemption under the Federal Tort Claims Act? It's not covered by discretionary function. First of all, the immediate lease says shall. The 10-day rule, they just made that up. And, you know, at what point can an agency do something that they should be held liable? Where is the line? You think if they had a 30-day time, it would have been okay? Or are you just saying they shouldn't have sent it down at all? They should not have sent out the suspension of benefits letter. Well, they should have sent them out. First of all, they had the immediately problem. They were nine years late in our view. But sending it to these type of people who they knew they had suicidal problems, it really goes back to the issue that no one, I've never been able to get the district court to address, and my opponents said we didn't address it, but we did. There's a regulation that says they have to do an individual assessment. These 900 letters were all the same except for the name. Weren't the letters in a sense setting up the individual assessments by saying to the people present evidence that you do deserve benefits and we will consider that evidence on an individual basis? That really goes to the appropriateness of the hearings later on. Our issue was a surprise suspension of benefits went under the statute. They had a right to send those letters if they had done it immediately upon notice of fraud or what that statute says. That occurred a long time before the letter was sent out. Absolutely. Four or five years. So they got a benefit that they weren't entitled to. You have astonishing facts here. I see my time is up. You can answer that question. You have astonishing facts here. By the way, this all happened a year before Kahn was indicted. The astonishing facts are why, according to the whistleblower case, the SSA knew of the unfortunate relationship, criminal relationship between Kahn and Judge Daugherty in 05 and 06. Why did they wait to 2015? And you have this astonishing fact, and this sounds like hyperbole, the reason they did not act sooner was that Judge Andrews, who was in charge of the SSA off in Huntington, engaged in a criminal conspiracy to cover it up. That's not rhetoric. Those are the factual basis of his guilty plea before Judge Reeves. So basically, they didn't act immediately because Judge Andrews conspired with Mr. Kahn to do a criminal cover up. If you want to save your time, I know you had saved five minutes. If you want to save that for rebuttal, that would be five minutes. Good morning, and may it please the Court. Thomas Pullum for the Acting Commissioner. The District Court's conclusion that it lacked jurisdiction over the plaintiff's claims is correct for two independent reasons. First, the FTCA's discretionary function exception bars the plaintiff's challenge to the manner in which SSA carried out the redeterminations of their entitlement to benefits. Second, Section 405H of the Social Security Act forbids the District Court from exercising jurisdiction under the FTCA over claims that arise under the Social Security Act. I'll start with the discretionary function exception. I think one thing that has been missing from the plaintiff's argument here is any argument as to how the District Court's judgment and analysis was wrong. The District Court was correct that the discretionary function test involves two elements. First, whether there's an element of judgment or choice in the challenged action. And second, whether that action was susceptible to policy analysis. The District Court correctly answered both questions. Your opponent is focusing on the language shall. How would you address that? I'd be happy to address that. The provision says that there are two interlocking provisions here. The first says that the Inspector General of the Social Security Administration must provide information to the agency as soon as it has reason to believe that fraud was involved in an application for benefits. The second provision says that the Commissioner shall immediately redetermine entitlement to benefits if there's reason to believe that fraud was involved. The way these provisions are structured, it employs what this Court in Myers referred to as an if-then structure. The duty arises only after an assessment is made with respect to the antecedent condition. So here, OIG had to determine whether there was reason to believe that fraud was involved in benefits. In order to do that, OIG had to undertake an investigation. So the District Court was correct that there is an element of discretion baked into this provision. What Myers described as this if-then structure presents OIG with a choice. Did the condition obtain or did it not? So if the condition had obtained, then there would be a non-discretionary duty? That's correct. So when OIG issued a referral that permitted SSA to move forward in 2015, it said we've provided you with the names of affected beneficiaries and the reasons giving the basis for its reason to believe that fraud existed. It said there are no objections to moving forward. The statute says that redeterminations won't proceed if a prosecutor objects to doing so, if it will interfere with a criminal prosecution. So that was another step that OIG had to undertake, was to verify that with prosecutors. So in 2015, OIG says here's the information, here's the basis for it, and there's no objection to proceeding. Within a week of that notice, which was dated May 12th, SSA sent out the redetermination notices. So I think that is immediately. Is there something that requires that the benefits be terminated immediately when that notification was sent out to the individuals, or was that a choice, a discretionary choice? That was also a discretionary choice. I would like to, I want to address this, I just want to point out that I don't think this was preserved. The plaintiffs offered no argument with respect to the district court's analysis of this issue. Nevertheless, when we look to what they argued in district court, and what my fellow counsel has indicated here, he said there was no provision that allowed this. But that gets matters exactly backwards, as this court has recognized in cases like Rosebush and Cole, and the Supreme Court recognized in Galbert, where there's no provision that, no law or regulation that mandates a course of action, in the absence of such a rule, there is discretion. You've got about 10 days now. Well, this applies to both the 10 days and the suspension. So there was no provision that said benefits can't be suspended. In fact, the HALEX says they can. And there's no provision that governs the amount of time that will apply. And in fact, the HALEX says that that's something that will be determined for each case. And those determinations involve, not only do they involve an element of choice or judgment, but they are susceptible to policy analysis. SSA can balance the need for fiscal responsibility and the concern that benefits are being wrongly paid, against fairness concerns, against the balancing all that together, they can look at what steps they think will be appropriate. Just so that I understand, there is no regulation or other source of law that said that SSA had to stop paying benefits at the time they sent the notice? That is correct. Nothing required SSA to suspend benefits. And just to be clear, this was a determination. The actual termination, if it happened, would occur after the redetermination. But the suspension means that the individuals are not receiving their benefits. And for many people, that is their sole source of income. For the time being, they would not be receiving that. And one other, just to be clear on the types of this program that's at issue here, these were disability insurance benefits under Title II of the Act. Those are not need-based benefits. For need-based benefits, there must be a hearing held before the payment of benefits is interrupted. That's required by the Supreme Court's decision in Goldberg v. Kelly. But for Title II benefits, the Supreme Court said in Matthew v. Goldberg, that a hearing is not required beforehand. These are people under the age of eligibility for old age benefits under Social Security, right? They must have been disabled and under 63 or whatever. Yes, that is my understanding. I believe they were. But if they're disabled and you say it's not need-based, it certainly is quite possible that many of them are in fact in need of their benefits in order to survive, isn't it? It is possible. I just wanted to distinguish between, to make sure the Court was aware that these weren't SSI benefits, that are benefits for the indigent disabled. This is an insurance program. They were not SSI, they were disability. That's correct. If it were SSI, and in fact in response to this fraud, SSA only suspended benefits to recipients of SSDI, disability insurance benefits. If someone received only SSI... Golding and Matthews v. Eldridge. I'm sorry? That's the holding in Matthews v. Eldridge. It's consistent with that, yes. Matthews v. Eldridge said that those types of benefits can be terminated without a prior hearing, but SSI cannot. And SSA's actions were consistent with that difference. Thank you. So can you address the 405H issue? I'd be happy to. Section 405H makes the review process that the Social Security Act provides in 405G exclusive. It says that jurisdiction is not available under the FTCA for a claim that arises under the Social Security Act. The Supreme Court in Salfie said that a claim arises under the Act if the Act provides the standing and substantive basis for the claim. The Supreme Court later described this as a broad construction of the provision. Here plaintiffs in their complaint say that they seek damages for the humiliation, pain, and suffering caused by the suspension of benefits. They claim negligence in carrying out a process required by statute to protect the integrity of the Social Security system. And their negligence claim is based in significant part, if not entirely, on an assertion that the conclusion that these claims arise under the Act. And I think that claim is also compelled or I'm sorry, that conclusion is compelled by this court's decision in Livingston, which involved a nursing home operator who sought consequential damages from its termination as a Medicare provider. In that case, the nursing home operator had already, had brought its claim before an ALJ and the ALJ said the state was wrong to terminate the status. So its status under the Act wasn't at issue. What the nursing home operator sought were consequential damages from the termination, so income that it lost out on. Similarly here, the plaintiffs seek similar consequential damages caused by what they claim is negligence in the execution of a Social Security administration of its statute. This is also consistent with the congressional design. As the Supreme Court noted in Chilokee when it considered whether a Bivens remedy would be available to people who were harmed, who claimed harm from constitutional wrongs during administrations of benefits programs, the Supreme Court said that Congress provided safeguards to protect the rights of beneficiaries, but didn't provide damages remedy. That same logic, as the Fourth Circuit recognized in applies here. This would give plaintiffs a remedy that Congress did not provide in a carefully structured statute governing the benefits program. So these are two independent reasons that you say that the courts lack jurisdiction. That is correct. Two totally separate independent reasons. One, the discretionary function exception which the district court correctly recognized. The second, the preclusion provision of the Social Security Act, which this court discussed in Livingston. So is Livingston the best case? That's a fairly old case. Is there any more recent Sixth Circuit case? I am not aware of a more recent Sixth Circuit case, but I think it's very instructive if not binding here. As we said, also consistent with the Supreme Court's analysis in Chilokee. If there are no further questions, we will ask that the district court's judgment be affirmed. Thank you. I would like to briefly respond to the argument that somehow our claims, I guess the genesis of them, arise under the Act. That's never what we've alleged. The cases he cited, the Salphy case, the nursing home case, those people were all claiming we didn't get the benefits we were entitled to. That was their core allegation. That's not what we're saying in this case. We're saying the Social Security Administration was negligent or more than negligent in taking away a surprise notice, taking away benefits when no statute authorized them to do that, imposing a 10-day mission impossible that they just made up. It's important. The Social Security Administration had, or any agency, had decided to come up with a plan to cause widespread panic and fear. This is it. They preyed on a vulnerable population, made up a 10-day rule. This happened. This is negligence. Is it foreseeable that you send out a surprise notice to psychologically vulnerable people who in your own records you indicate they've got a history of suicide problems? Is it foreseeable they're going to kill themselves? We had two right after the 10 days expired. But for Congressman Rogers, how many? At what point is there a line that the government can't cross? And I think given the astonishing facts of this case, I mean, John Grisham could never have imagined these facts. But that's what we're left with. And to say somehow this is discretionary, I mean, I take a harder view of that. At this point, Conn had not been indicted. There had been national publicity, 60 Minutes, Wall Street Journal. Senator Colburn had said, well, the clients must have been involved. Influential member of Congress. There's zero evidence any client was involved. Social Security Administration can't find the first client who ever met Conn. You saw his picture on billboards. So I think there was a political agenda, animus toward these people. They're vulnerable people, powerless people. They're frustrated. Conn's been doing everything. He hasn't been indicted. So let's go after these people. And but for Congressman Rogers, how many more suicides would we have had? Is it your position that there's a cause of action way back when it first came out that Eric Conn was a fraudulent lawyer? They should have done it right then. Should have sent notice to your clients. But they should have done it right then. Should have sent notice. Don't suspend the benefits and have hearing then, rather than have us going back nine years and trying to get medical records to prove we were disabled back then. As we discussed in the Hicks v. Coven argument back in March, Judge Sipar accurately said these are travel-back-in-time hearings trying to find records generated ten years ago. It was a mission impossible. This ten-day thing is probably the most egregious part of this, Judge. To tell people you have ten days to get records that were generated ten years ago, not to mention the competence of some of my clients, might as well have been ten minutes. Your primary complaint is the ten-day rule or the cutting out for the benefits? All of the above. I want to go back to the they should have done an individual assessment. That's their regulation. And there's no discretion. They don't have the right to violate their own regulation. And that was a direct violation. They've never denied that. So we have the individual assessment. They didn't do it immediately. The ten-day notice. You're mentioning this. They should have done an individual assessment before cutting off the benefits. Is that what you're saying? Yes, Your Honor. So what provision do you rely on? There's a regulation. We cited it. It's a regulation part of their rules. It's a regulation in your brief? It's in there. It's in a footnote. I think it's on page five. I don't know if it's in my brief or in the pleadings below, but we've always argued that. And they sent out 900 letters. They were all the same. We've alleged they didn't do an individual assessment. And that's our evidence. I don't know anything else. Anybody has a question? Thank you very much. Thank you both for your argument. The case will be submitted. Would the court call the next case, please? Case number 172485, Gary Lee. Argument not to exceed 15 minutes. Mr. Linus Banghart-Linn, you may proceed for the appellate. Your Honors, and may it please the Court, Linus Banghart-Linn, Assistant Attorney General for the State of Michigan, on behalf of the Respondent Warden, respectfully requesting that this Court reverse the District Court, which abused its discretion by ordering a new trial when there's been no opportunity to show whether or not Mr. Ewing was denied a fair trial by extraneous influences on the jury. At the outset, I do want to correct something that is in my opponent's brief. When he expressed this, that we've basically conceded that the jury was exposed to extraneous influences. We haven't conceded any such thing. That's what a hearing is for. We have an affidavit which makes a prima facie case, which we believe entitles Mr. Ewing to a hearing to prove whether or not the jury was exposed to any extraneous influences. That's the first step. Then the question would be, if they were significant, were they harmless? Without any evidence beyond a piece of paper, no court can make that determination. We submit that the trial court erred, the Michigan Court of Appeals erred, and the District Court erred. All of them believed that they could decide, based on this one piece of paper, whether or not the jury was exposed to extraneous influences. What do you think the District Court should do? Send it back down to the trial court for a decision, or have a rimmer hearing, and make a conclusion? Does the District Court retain jurisdiction in the case? I don't believe the District Court would retain jurisdiction. I believe that depending on the conclusion of the trial court, the losing party should be allowed to appeal. I believe the Michigan Supreme Court should be allowed the opportunity to pass on the question. Then at that point, if Mr. Ewing is still aggrieved, then the District Court could hear that again in a second habeas petition. Or perhaps the District Court could retain jurisdiction through the pendency of all of that, and just stay the case that time. How many years has it been since the trial? I'm not aware of that number, Your Honor. I think it's something like eight or nine years. I was going to say nine years. Let's assume that it's in that ballpark. How on earth can one expect that an evidentiary hearing on what those jurors were exposed to or knew at the time of that trial succeed in any way? Most people wouldn't remember what happened eight or nine years ago if they were on a jury, would they? I'm not an expert in that. I would submit that yes, I think that's a memorable experience. People don't serve on many first-degree murder juries in their lifetime. I think that's a memorable experience, and I think that Juror Burns probably remembers well what happened. I think Jurors James and Chesney, and in fact, I think probably all 12 jurors do. Do you know if those jurors are alive? I don't know, Your Honor. I don't know. These are things that the court can take into account and can say, we've tried to have a hearing. We couldn't get these jurors here because they're missing or they're dead. We can make inferences, and we can hold that against the state perhaps, and we can say, you know, we can try to inferences. So that's the question. Suppose, hypothetically, that these jurors are inaccessible, either dead or can't be found. So against whom would any burden or presumption be placed? You just said it would be placed against the state. I think it would depend, and I think it might well be placed against the state. What would it depend on? I think it might depend on whose fault it is. I think, unfortunately, the fault lies mainly with the Wayne Circuit Court because in the Wayne Circuit Court, both parties agreed, let's have a hearing. It's fresh. Let's do it now. And the Wayne Circuit Court said, we don't need a hearing. I've looked at this affidavit, and there was no, this was harmless. And the mistake is, right, if we hold a hearing, we might determine, I think the assumption that everyone made is that what's in the affidavit would be proven and nothing more. And it's possible that what's in the affidavit might be proven and much more, or it's possible that less would be proven. Perhaps Juror Burns has put on the stand and says, yes, I was on that jury. I never filled out this affidavit. Right? The hearing's at an end, and we're done. Or, yes, Judge? I want to follow up on what you said earlier in response to the question about whether the district court would retain jurisdiction. It would seem like your argument is based on the relief that was granted in Remmer, which was to remand for a hearing, and if a hearing showed that this was improper, the court would presumably proceed with a new trial. Right. I think... Instead of remanding for a new trial, you would remand for a hearing to determine whether a new trial is warranted, and if it is, a new trial would happen. You wouldn't have to go back to the federal court to get a new trial. You wouldn't have to go back to the federal court to get a new trial. No. If the, if, okay, so I think... So if everybody's doing exactly what they're supposed to do, according to you, and it goes back to the trial court, and the trial court has a hearing, of course, if it decides there was no problem, then that would be the end of it, unless there were appeals. Correct. If the jury, if the trial said, the trial court said there was a problem, then they would order the trial, and you'd go to trial, and they'd be convicted or not, and whoever lost would appeal. Right. Or, well, I guess he would appeal if he lost. Right, right. I think... Is that what you're asking for? And I misunderstood when you said you were, the district court should maintain jurisdiction, or something like that. I think I might not have been clear. I think if the final decision of the Michigan state courts, after appeals, is no new trial is necessary, then I think the district court could maintain jurisdiction, and Mr. Ewing could come back and say, all right, they held the Remmer hearing, and here's why the state court's decision following the Remmer hearing was an unreasonable application of Remmer. And that would be, but if... I have trouble seeing why that's a retention of jurisdiction kind of thing. I mean, you enter a habeas, or you don't, and the habeas is conditioned on certain things, and in fact, and they can do as they do. I'm not understanding why you would retain jurisdiction in that situation. I guess the problem with not retaining jurisdiction is, suppose the state court says you're not Mr. Ewing tries to file a new habeas petition, and it's barred by a second or successive, or it's barred by... A second or successive? Well, it's challenging the same conviction. There's another wrinkle, too, which I forgot when I was first answered the question, when I first tried to answer the question, there's another wrinkle, which is there are two other habeas claims that the district court declined to pass on, and so those are also still in the mix, unfortunately. So I think the best practice would be for the district court to stay the habeas petition, let the process play out. Now, if the final decision of the state court is that a new trial is required, then the other habeas claims are moot, a new trial is required, the district court can dismiss the petition as moot. What were the other two habeas claims? There was a claim of actual innocence, and I believe... Was that based on sufficiency of the evidence? No, it's just a freestanding claim of actual innocence, which we pointed out in the answer is not recognizable. It's also not an exhausted claim. The first claim, I don't recall, I think it is a jury... Both were found to be moot because there was necessarily going to be a retrial if... That's right. That's why the district court didn't pass them. If we say no, as you ask, and send it back so that the habeas requires that there be a hearing, then does the district court then have to rule on the other two claims that are now no longer entirely moot? I think the better practice would be for the state court to resolve the known constitutional violence. What about the federal court? No, I know. I think the federal court should wait until the state court has remedied... What if they're valid claims? Why should there be a delay in the federal court resolving hypothetically valid claims that have been presented to it? Right. I guess my question might betray my bias, which is that they're not valid claims. Assuming they're valid claims, I think the district court could exercise its discretion and go either way. I think we have a known constitutional violation now, which was the denial of a Remmer hearing. I think my answer would be, let's remedy the constitutional violation we do know about before we go on to spend time writing an opinion that says... Either way, we could let the district court deal with that. I think that's correct. The district court said they're moot and they're no longer moot, so then the district court has to figure out what to do. Right. I think that's correct. If indeed there was an extraneous influence, and if it influenced the jurors' votes in this case, and that comes out at the Remmer hearing, then the district court has saved the trouble of having to decide these other two claims. Why isn't it within the scope of the district court's discretion to decide that given the length of time that's passed, and given the clear constitutional violation of not affording an evidentiary hearing, to say, let's give Mr. Ewing a new trial? Why is that not within the discretion of the district court that we would be reviewing as a remedial choice by the district court? Because the parties never argued and the district court never found that the length of time that elapsed would be a bar to a hearing. I think that we have a different question. If that question had been joined and argued and decided below, we would be in a different position. So I think that's the first answer. I think that it is up to the state court to make findings as to whether too much time has passed. I mean, we have full dress trials on murders that happened 30 years ago. I think we can have a hearing based on a trial that happened less than 10 years ago. And if we can't, that's a finding that the state court can make. And the state court can say in the first instance, you know, it's been too long, we can't find the witnesses, this goes against Mr. Ewing or it goes against the state. And then the district court can review that decision and say, actually, it was an abuse of discretion. We don't have the facts right now, you know, and that's... Even when there's a clear, I mean, you have conceded that there was a constitutional violation in denying the Remmer hearing. Correct. So what you're doing, in effect, is rewarding the state courts for their mistake that was a clear constitutional violation. No. We're not rewarding or punishing the state courts because the point of habeas is not to reward or punish state courts, it's to put right what went wrong. The state court failed to do something and now we're asking the court to order it to do what it failed to do. It's not a reward or punishment. What we're arguing against is the district court rewarding Mr. Ewing for the state court's failure. He's not entitled to that reward just because... Didn't he bring this up from the very beginning? He did. Did he learn about this? He did, and he's absolutely entitled to what he asked for. He's absolutely entitled to a Remmer hearing. He's not entitled to a windfall, which is what he gets because the state court messed up and now he gets a retrial. But also, according to you, the district court messed up. I agree. Was the district court put on notice that this argument was there? I mean, did you make this argument to the district court? We didn't argue which remedy was appropriate in the district court. It might have been useful. It might have been useful. We argued that no remedy... No, we don't waive the remedy. I would compare this to a case if the district court had overreached by saying retrial is barred by double jeopardy, there would be no argument that we couldn't come into this courtroom and say, hang on. That's because that would be a reach. This seems sort of integral, something you might have drawn to the... Then the district court could have explained why it thought this was the right remedy rather than some other remedy. I understand. You never raise it to them. The district court's never had a chance to say, well, I did this because memories were dull. Then somebody could have come in and argued, no, memories aren't dull. Who knows? It seems a little bit like we're doing what we're often loathed to do, which is to reverse the district court on something that they never were really presented with. I disagree, Judge. My time is just about to end. I'm going to answer as briefly as I can if that's all right. I think the district court was on notice even if we didn't develop the argument in our brief because that's what Mr. Ewing requested. The district court actually held the denial of the Remmer hearing was the violation. Remmer says, we hold a hearing in United States versus... There was a case where it was... Remmer was right on direct appeal, right? I'm sorry? Remmer was on direct appeal. That is correct. So to hold a hearing was close in time to what was happening. I don't know how far the trial in Remmer to the U.S. Supreme Court decision in Remmer was. Presumably, it was closer than nine years. Presumably closer than nine years. Presumably closer than nine years. Indeed. But again... It was at least a couple of years. It was at least a couple of years. Well, it was a long time ago, so... They might have been faster. Again, if the district court had joined the question of whether the reason we don't hold a hearing now is because time has passed, memories have the court just said, he's proven extraneous influence. He hasn't proven anything. There's been no hearing, only an affidavit. It doesn't prove anything. Maybe we could send it back to the district court to examine whether... What the right scope of relief is, having not presented it to the district court before. Or maybe that would just delay things even worse. I think it would just delay things even more. The district court recognized what the violation  Thank you. Thank you, your honors. Good morning. My name is Philip Komorski. I represent Mr. Ewing. I want to touch upon what Judge Rogers brought up about why wasn't this brought up in the initial habeas response by the government. And I indicated in my brief that they actually took the total contrary position that they are taking now on appeal. They said, quote, because Ewing failed to show a colorable claim that the trial court properly denied his request for an evidentiary hearing, he likewise failed to show a violation of his due process rights. They took the position that we weren't even entitled to a hearing when this habeas petition was filed in front of Judge Hood. Do you argue in your brief to us that they waived this argument? Yes, that's part of the argument we are bringing up in your brief. I look for it. Certainly. On page 31 of my brief, I stated, quote, by disputing and then expressly endorsing the district court's finding, respondent has waived the issue for appellate review. I took that to mean they waived the issue of whether there was an underlying violation. I'm sorry? I took that to be that they waived a review of the underlying violation, which you spent a lot of time in your brief talking about, when they did waive review of that, right? Well, certainly, but maybe I wasn't entirely clear on how I phrased it, but it was right after I pointed out the differences between the Attorney General's habeas claim and, I'm sorry, the response to our habeas claim, and then, of course, their claim on appeal. It's totally contrary, totally different arguments that they are making, because on appeal, they take the position that Petitioner Ewing was denied due process, that a colorable claim of extraneous influence has been raised, and that the Michigan Court of Appeals could not adequately determine that harmless error occurred without a so-called grammar hearing. Totally contrary to the position they took in response to our habeas petition that was in front of Judge Hood. As you indicated, Judge Rodgers, had they taken the position they are now taking here on appeal, it's highly likely that Judge Hood could have evaluated it from that perspective and determined whether or not this is only entitled to a remand for a hearing, or if an actual new trial should be granted. I agree with Judge Moore, but just to- You're saying now that they should have argued this in the alternative to the district court? Yes. Again, I agree with Judge Moore that logistically, given the fact that this case is 8 years old, digging up- I would like to have the district court chime in on that. District court seems to have lost the topic. I'm sorry? I understand your argument, thank you. All right. Furthermore, I think the issue before Judge Hood was whether or not the state courts abused its discretion in finding an extraneous influence, which they did. The Court of Appeals found there was an extraneous influence, but then applying the harmless error standard. I agree with the Attorney General on this. If you don't have a hearing, you can't apply harmless error. Since they incorrectly applied harmless error, then as Judge Hood pointed out in her decision, this is a trial error that entitles the petitioner to habeas relief. I'm sorry? As I understand REMER, the REMER relief that actually was ordered in REMER, although the time period was more condensed, was what you're arguing against today, and was what your opponent is arguing for, which is send it back for a hearing, and then if after the hearing it turns out that there's a constitutional violation, you have a new trial, as opposed to send it back for an issue of habeas conditioned on a new trial. Well, I'm not exactly arguing against sending it back. If that's an alternative form of relief, I would not certainly argue against it. That's what we're asking for on appeal. I understand. So if you're opposing their appeal, you're saying don't send it back for a hearing, send it back conditioned on a new trial. Correct. That's not what happened in REMER. Instead, what happened in REMER is what they're asking for that you're objecting to now on appeal. Is that correct? That is correct. Okay, so A, I'm wondering how you distinguish REMER, if there's any distinction other than in the relief that was given here, which is habeas conditioned on retrial rather than a REMER-type relief. The case I would direct Your Honor to would be the Nevers case, obviously. That was predicated on affidavits that were presented after the fact. I don't believe there was an actual hearing held, and it was upheld. What was the order that was required in that case? Which case is that? Nevers v. Killinger, I believe it's called. That was the one where the police officers were tried for second-degree murder in the Malice Green beating, and there was information that came to the attention of the jurors while they were deliberating concerning the possibility of a riot occurring and some other things that were introduced to the jurors that came to the attention of the trial court after the fact by way of affidavits. And the new trials were denied without holding a hearing, and what ultimately happened is federal habeas relief was granted in the Nevers hearing and was upheld by this court. What was the habeas relief that was granted? A new trial. A new trial. And again, I do agree with the passage of time as well. As this court is well aware, people forget things, and ironically, the trial court judge in this case has since passed away. So Nevers is your best case in terms of a Sixth Circuit-published case, saying that for a constitutional violation, a failure to investigate juror misconduct, we'll call it, the remedy should be a new trial. Yes. Remmer itself is, of course, different because it was a direct appeal. That's true. That is true. So it may make more sense to remand, given not only the time passage, but also the fact that the supervisory aspect of the federal court. But that sort of cuts both ways. On the one hand, the state could argue it's less of an infringement of the comity principle between the federal government and the state to give the state courts the power to provide relief here. How do you respond to that? The only way I could really respond to that is the party that really gets burdened in the end is Mr. Ewing. As this court has acknowledged, this case has been going on for eight years. He's been denied at all different steps along the way by all the opponents of the case. And as this court is well aware, if this goes back and a hearing is held, then a whole new line of appeals come up. And all the while, Mr. Ewing is sitting in prison on this case. So I think in the end, it not only implicates him as far as having to sit in prison, but it also is a huge burden on himself and his family as far as legal expenses goes. Of course, the trial court might grant the relief itself, right? That's certainly possible. Or the court of appeals. That's certainly a possibility, certainly. Especially if you can't find the jurors or they can't remember what happened. That's certainly true. Does the court have any other questions? I don't think we have any questions. I'm looking at Nevers. It looks like they affirmed the conviction at Nevers, so that's why I'm puzzled. Did they affirm? What is the result in Nevers? My understanding is they affirmed the grant of the habeas petition. Oh, they affirmed the grant of the habeas, I see. Conclusion. We hold that the district court erred in concluding that the petition for a writ of habeas corpus should be granted. Oh, wait a minute. We hold further. I'll look at it. Thank you. Certainly. Did you have any further questions? Thank you. All right. Briefly, your honors, I think I need to discuss Nevers v. Killinger. In one respect, Judge Moore, you've anticipated my argument, which is that the petitioner is not going to be entitled to a greater remedy on 2254, given the concerns of comedy, federalism and respect for state court judgments, than a defendant would be entitled to on direct appeal. The passage of time is an issue, but that's not an issue that's ever been discussed before. That's something that would need to be discussed. We would argue by the state court in the first instance, at the very least by the district court. But he distinguished the Nevers case. That's what he says is ruling here. Yes. And I think the biggest distinction with Nevers v. Killinger is that the facts of the extraneous influence were established and were accepted and actually explicitly found by the state courts. There was no dispute as to whether the jurors actually viewed the film Malcolm X and what parts they viewed. The court knew it because they gave, the court gave the jury the film to view sort of to keep them entertained, not to try to influence them, although it was not a Remmer case in the first place. Right. There wasn't really a need for hearing because nobody really disputed the influence on the jury. Here, we don't know if the jury was exposed. You don't know what the influence of a movie is until you examine the jurors and find out what they thought about the movie. Right. But again, well, that would have been a better course to take perhaps, but the state court went ahead and made the factual findings and said, here's what we believe the factual findings are. And so then on habeas, you can take those factual findings. Here, contrary to what my friend just said, the Michigan Court of Appeals never held that there was an extraneous influence on the jury. They took the affidavit and accepted it as true for the sake of argument. And so hypothetically, assuming these allegations are true, this would be harmless. And the error with that is perhaps the allegations are true and perhaps much more is true. And you can't just say, this is true and no more and it's harmless. The hearing needed to be held and also possibly they would be found to be false. And so that's the distinction, one distinction with Nevers versus Killinger is we knew the facts in Nevers. I see my time has expired. I've got more, but I'd be glad to answer any questions, otherwise I will sit down. Thank you. I don't think so. Thank you. Both for your argument. The case will be submitted. Thank you. And would the clerk adjourn court, please? This honorable court now stands adjourned. Thank you. Thank you. Thank you.